1

2

3

4          **UNITED STATES DISTRICT COURT**

           **DISTRICT OF NEVADA**

5

6   PATRICIA LOUISE ANTHONY

7              Plaintiff,                                          3:14-cv-00649-RCJ-VPC

8         vs.                                                      **ORDER**

9   OLIVIA TODD, *et al.*,

10             Defendants.

11

12         This case arises from the alleged improper foreclosure of property in which Plaintiff

13   claims an ownership interest.  Pending before the Court is CitiMortgage, Inc.'s ("CMI") Motion

14   to Intervene (ECF No. 21) as well as its Motion to Dismiss (ECF No. 22).  Also pending are

15   Motions to Dismiss (ECF Nos. 23, 24) filed by Defendants Das, Fraser, Corbat, Todd, and

16   Marshall.  CMI has also filed a Motion to Stay Discovery (ECF No. 32).

17   **I.        FACTS AND PROCEDURAL HISTORY**

18         Plaintiff's *pro se* filings are somewhat difficult to understand, but it appears that the

19   relevant facts are as follows.  In 2006, Robert E. Smith and Elizabeth H. Smith purchased a

20   manufactured home that is located at 5132 Carol Drive, Sun Valley, Nevada 89433 ("the

21   Property") with a mortgage loan from Citicorp Trust Bank ("Citicorp") for $95,430.98. (Deed of

22   Trust 1–3, ECF No. 21-1).  The mortgage was evidenced by a promissory note and Citicorp

23   retained a deed of trust, which was recorded in the Washoe County Recorder's Office. (*Id.* at 17).

24

1

1    It appears that on May 31, 2011, Citicorp sent the Smiths a notice of default. (Notice and

2  Demand, ECF No. 30, at 3).  The Smiths then apparently contacted Plaintiff, perhaps for help in

3  the matter due to her experience with her own mortgage default. (*See Anthony v. Capitol*

4  *Commerce Mortg. Co.*, 3:10-cv-00169-RCJ-WGC).  Or perhaps Plaintiff was currently living in

5  the Property; the Complaint is unclear.  Whatever the reason, Plaintiff leaped into action and

6  began her crusade to save the Property from foreclosure.

7    On June 24, 2011, Plaintiff apparently purchased an interest in the Property for "One

8  1979 Susan B. Anthony Liberty Silver Dollar" and received a deed from the Smiths. (Deed, ECF

9  No. 1-1, Ex. 2).  It is not clear whether or not the deed was recorded.  Regardless, on June 27,

10  2011, Plaintiff recorded a "Notice of Option," stating that Plaintiff held "the option to purchase"

11  the Property and that "[a]nyone dealing in and with the subject property should contact the

12  [Plaintiff]." (Notice of Option, ECF No. 30, at 8).  Three days later, Plaintiff sent Citicorp a letter

13  as a response to the notice of default.  The letter provided Citicorp with an ultimatum: either send

14  Plaintiff "verified written assurance" that Citicorp would accept full payment of the mortgage

15  from her in exchange for the original promissory note and deed of trust —along with proof of the

16  loan's legitimacy—or admit that Citicorp had no interest in the Property. (Notice and Demand,

17  ECF No. 30, at 3–7).  The letter warned that "silence is acquiescence." (*Id.* at 3).

18    Citigroup never responded to Plaintiff's request, which to Plaintiff meant that the debt

19  owing on the Property was "legally and financially settled." (Compl., ECF No. 1-1, at 4).  To

20  Plaintiff, Citicorp's failure to provide verified proof that it was the proper party to receive

21  mortgage payments equated to an admission that it did not hold a valid original contract. (*Id.*).

22  On this basis, Plaintiff recorded a "Rescission of Deed of Trust" on December 9, 2011 with the

23  Washoe County Recorder, essentially stating that "there exist[ed] no lawful basis" for Citicorp's

24

1  deed of trust. (Rescission of Deed of Trust 2, ECF No. 21-2).  The document further claimed that

2  pursuant to the "Rescission of Deed of Trust," "any and all recordings pertaining to said [deed of

3  trust] by 'Lender' Citicorp Trust Bank, fsb or its alleged successors and or assigns are null and

4  void ab initio and of NO force and effect." (*Id.*).

5       On October 22, 2013, Citicorp assigned the promissory note and deed of trust for the

6  Property to CMI and recorded the assignment with the Washoe County Recorder's Office.

7  (Assignment of Deed of Trust, ECF No. 21-3).  CMI substituted trustees under the deed, naming

8  National Default Services Corporation ("NDSC") as trustee on December 24, 2013, which was

9  also recorded. (Substitution of Trustee, ECF No. 21-4).  And on June 3, 2014, NDSC recorded a

10  notice of default against the Smiths for failure to pay on the note. (ECF No. 21-5).

11       NDSC agents then  posted a Notice of Default and Election to Sell on the Property's

12  door, which Plaintiff alleges violated her "posted NO TRESPASS notice." (Compl., ECF No. 1-

13  1, at 4).  In response, Plaintiff returned the posted Notice to NDSC "via certified mailing

14  service" and she also recorded a document titled "Notice: Rebuttal to and Voidance of Alleged

15  A) Assignment of Deed of Trust and B) Notice of Default and Election to Sell Under Deed of

16  Trust." (*Id.*; *see also* Rebuttal Notice, ECF No. 21-6).  The Notice claimed that Plaintiff had

17  received a power of attorney from the Smiths and that pursuant to her previously recorded

18  "Notice of Option" and "Rescission of Deed of Trust," as well as Citicorp's and CMI's failure to

19  respond thereto, CMI could not assert "a lawful assignment or default." (Rebuttal Notice 3).

20       Despite Plaintiff's efforts, NDSC obtained a foreclosure mediation certificate, which was

21  recorded on August 25, 2014. (Certificate, ECF No. 21-7).  NDSC then noticed the trustee's sale

22  on November 3, 2014 and set the sale date for December 15, 2014. (Notice of Trustee's Sale,

23  ECF No. 21-8).  In a final effort to fend off the foreclosure, Plaintiff recorded a "Rebuttal and

24

3

1  Sale Estoppel Order" protesting NDSC's actions and vigorously asserting that CMI had "no

2  verified interest" in the Property. (Compl., ECF No. 1-1, at 4; Rebuttal and Sale Estoppel Order

3  1, ECF No. 21-9).  The foreclosure sale occurred on December 15, 2014 and CMI took title to

4  the Property. (Trustee's Deed Upon Sale, ECF No. 21-10).

5       Plaintiff then filed this lawsuit.  The Complaint includes two parts, a "Prologue" section

6  and a "Claim" section, along with various documents. (ECF No. 1-1).  Plaintiff seems to be

7  claiming unlawful foreclosure and seeks to quiet title on the Property.  Rather than naming CMI

8  as the Defendant here, Plaintiff sued a handful of CMI and NDSC officers.  CMI, therefore, has

9  moved to intervene in this matter as it now claims sole title to the Property.  CMI also moves to

10 dismiss the case for failure to state a claim pursuant to Rule 12(b)(6).  The various CMI and

11 NDSC officers also move to dismiss the case either as to them individually for lack of interest in

12 the Property or in its entirety for failure to state a claim.

13 **II.      MOTION TO INTERVENE**

14      "On a timely motion, the court must permit anyone to intervene who . . . claims an

15 interest relating to the property or transaction that is the subject of the action, and is so situated

16 that disposing of the action may as a practical matter impair or impede the movant's ability to

17 protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.

18 24(a)(2).  Where the motion is timely and the other elements of Rule 24(a)(2) are present, the

19 Court should grant the motion. *Orange Cnty. v. Air California*, 799 F.2d 535, 537 (9th Cir. 1986)

20 (identifying the requirements presented in Rule 24(a)(2) as a four-part test to determine whether

21 an application for intervention should be granted).

22      The Court finds that CMI clearly should be allowed to intervene as a matter of right.  The

23 motion was timely made as it was submitted shortly after the case was filed and prior to an

24

4

1   answer from any of the Defendants. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d

2   1297, 1302 (9th Cir. 1997) (stating that the stage of the proceeding is a factor to consider when

3   determining timeliness).  Moreover, after the foreclosure sale, CMI claims to be the only lawful

4   owner of the Property and disposing of this case certainly will impact CMI's interest therein.

5   The current Defendants claim no interest in the Property and are only tangentially related to this

6   case due to their employment with CMI and NDSC; thus, the named Defendants do not

7   adequately represent CMI's interest.  The Court, therefore, grants CMI's Motion to Intervene.

8   **III.   MOTION TO DISMISS – Rule 12(b)(6)**

9       **A. Legal Standard**

10      The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the

11  legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The issue

12  is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer

13  evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)

14  (quotations omitted).  To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed

15  factual allegations, but it must plead "enough facts to state a claim to relief that is plausible on its

16  face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell*

17  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

18  (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows

19  the court to draw the reasonable inference that the defendant is liable for the misconduct

20  alleged").

21      Even though a complaint does not need "detailed factual allegations" to pass Rule

22  12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the

23  speculative level . . . on the assumption that all the allegations in the complaint are true (even if

24

1   doubtful in fact)." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or

2   'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

3   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

4   enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

5         However, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint,

6   however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

7   by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations and quotations

8   omitted).  Yet *pro se* litigants are still "bound by the rules of procedure." *Ghazali v. Moran*, 46

9   F.3d 52, 54 (9th Cir. 1995).  And where the litigant fails to follow rules of procedure, the case

10   may be properly dismissed." *Id.*

11         **B. Discussion**

12         Defendants argue that the Complaint should be dismissed because Plaintiff fails to state

13   any viable claims.  In the alternative, Defendants contend that their Motions to Dismiss should

14   be granted because Plaintiff failed to properly respond to the Motions as required by Local Rule

15   7-2.  This failure, they argue, constitutes consent to the Court granting the Motions.

16               **1. Wrongful Foreclosure**

17         A liberal construction of the Complaint convinces the Court that Plaintiff is alleging that

18   CMI wrongfully foreclosed on the Property and that she is seeking to quiet title in her favor.

19   "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish

20   that at the time the power of sale was exercised or the foreclosure occurred, no breach of

21   condition or failure of performance existed on the mortgagor's or trustor's part which would

22   have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Fed. Sav. &*

23   *Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983).

24

1      It is clear from the letter that Plaintiff sent to Citicorp on June 30, 2011 that she and the

2  Smiths were not contesting that the Smiths were in default of the terms of the note and deed of

3  trust.  And nothing in the record indicates that the default was cured prior to the December 15,

4  2014 foreclosure sale.  In fact, Plaintiff's contention that the Property was wrongfully foreclosed

5  arises only from Citicorp's failure to respond to her offer to pay off the mortgage, which Plaintiff

6  was only willing to do once Citicorp provided verified written assurance that it would accept

7  payment from Plaintiff in exchange for the note and deed of trust.

8      Because Plaintiff fails to plead that the Smiths were not in default at the time of the

9  foreclosure, the "wrongful foreclosure claim must be dismissed." *Wensley v. First Nat'l Bank of*

10  *Nev.*, 874 F. Supp. 2d 957, 965 (D. Nev. 2012).  Plaintiff's various recordings in the Washoe

11  County Recorder's Office claiming to renounce Citicorp's deed of trust and rebutting the notice

12  of election to sale have no effect here.  The deed of trust was properly recorded and had priority

13  over any other deed that Plaintiff may have recorded.  Her disagreement with the process does

14  not undermine what appears to be an otherwise properly conducted foreclosure pursuant to

15  N.R.S. 107.080.

16      The Court notes that Plaintiff also fails to demonstrate that neither she nor the Smiths

17  were denied the opportunity to redeem the Property prior to the foreclosure sale.  By selling an

18  interest in a mortgaged premise, "the mortgagor does not relieve himself or herself from personal

19  or primary liability on the note or bond evidencing the mortgage debt." 59 C.J.S. Mortgages

20  § 467 (2015).  "The mortgagor also is not relieved of liability, in particular, where he or she

21  conveys the property [or an interest therein] with no provision for payment of the mortgage, in

22  which case, the mortgagor remains the principal debtor." *Id.*  Here, Plaintiff never formally

23  assumed the loan, though her interest was obviously subject to Citicorp's deed of trust.  The

24

7

1    mortgage remained the Smiths' obligation, and they did not attempt to redeem the Property from

2    foreclosure at any time.

3        However, "[w]here a person not obligated to pay the mortgage debt does so or advances

4    money for such purpose, the payment will operate as an equitable assignment of the mortgage,

5    not as an extinguishment of the debt, where such is the evident intention of the payor." *Id.* § 425.

6    Plaintiff, therefore, may claim an equitable assignment of the mortgage if she can show that she

7    paid money to satisfy the mortgage.  Per the Complaint, though, it does not appear that Plaintiff

8    ever made an unconditional tender of any mortgage payment to Citicorp.  And "[a] mere promise

9    to pay" a debt owed by a debtor "does not constitute an equitable assignment." *Stock Growers'*

10   *& Ranchers' Bank of Reno v. Milisich*, 233 P. 41, 44 (Nev. 1925).

11       Although Plaintiff recorded the Notice of Option, there is no additional evidence that

12   Citigroup would have had any knowledge, actual or constructive, that Plaintiff owned any

13   interest in the Property.[1]  The Notice of Option referenced her only as an "optionee," (Notice of

14   Option, ECF No. 30, at 8), and there is no indication that Plaintiff's deed was ever recorded.

15   Thus, it is not surprising that Plaintiff did not receive a response to her letter demanding the

16   verified written assurance.

17       Furthermore, Plaintiff never alleges that she actually tendered the amount due under the

18   mortgage to Citicorp, or that she could even afford to do so.  In the June 24, 2011 letter, she

19   indicated that she was willing to make arrangements to settle the matter so long as Citicorp

20   agreed to her terms.  As if anticipating that she would receive no response, Plaintiff included

21   what she decided to be legally enforceable language that silence on Citicorp's part would equate

22   to acquiescence that the deed of trust was not valid.  Indeed, once Citicorp did not respond to her

23   ────────────────────

[1] This is particularly true since the deed of trust required the Smiths to give Citicorp notice before transferring any
interest in the Property to a third party. (Deed of Trust ¶ 18, ECF No. 21-1).  It is clear that the Smiths gave no

24   notice before allegedly selling an interest in the Property to Plaintiff for a Susan B. Anthony silver dollar.

8

1  letter, Plaintiff made no further efforts to tender the outstanding balance and instead proceeded

2  as though Citicorp had forfeited its right to claim a legitimate deed of trust.[2]

3  **2. Quiet Title**

4  Plaintiff also fails to demonstrate that she is entitled to quiet title.  Under Nevada law,

5  "[a]n action may be brought by any person against another who claims an estate or interest in

6  real property, adverse to the person bringing the action for the purpose of determining such

7  adverse claim." NRS 40.010.  "A plea to quiet title does not require any particular elements, but

8  'each party must plead and prove his or her own claim to the property in question' and a

9  'plaintiff's right to relief therefore depends on superiority of title.'" *Chapman v. Deutsche Bank*

10 *Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 808

11 (9th Cir. 1992)).

12 Plaintiff's quiet title claim must be dismissed as to the individual Defendants, since CMI

13 is the only party asserting an adverse interest in the Property. *See* NRS 40.010.  But even against

14 CMI, Plaintiff is not entitled to the equitable relief she seeks.  Plaintiff does not contend that

15 Citicorp's deed of trust was recorded well before she purchased an interest in the Property.  The

16 deed of trust was recorded in 2006 while Plaintiff received her deed in 2011.  The fact that

17 Citicorp did not respond to Plaintiff's letter demanding that she be given proof that Citicorp

18 lawfully held the note and deed or that Citicorp provide verification that it would accept

19 Plaintiff's payment to satisfy the debt does not impact the seniority of Citicorp's, and

20 subsequently CMI's, deed of trust.

21 ///

22 ///

23 _____

24 [2] Plaintiff did send another letter to Citicorp on July 19, 2011 informing Citicorp that she had received no response but permitting Citicorp to correct its "fault" by July 30, 2011, after which time Plaintiff would "consider the matter between [she and Citicorp] to have been legally and financially settled." (July 19, 2011 Letter, ECF No. 30, at 10).

9

**3. Failure to Respond**

In addition to the substantive grounds for dismissal, Plaintiff has also failed to adequately

respond to Defendants' Motions to Dismiss.  Local Rule 7-2(d) requires that a party opposing a

motion must file "points and authorities in response" to that motion.  While Plaintiff has filed a

plethora of documents supposedly in opposition to the Motions, (ECF Nos. 27, 28, 29, 30), the

Court finds that even collectively they cannot be characterized as legal points and authorities, no

matter how liberally the documents are construed.[3]  Therefore, the Complaint may also be

dismissed on procedural grounds.[4] *See Ghazali*, 46 F.3d at 54.

**4. Leave to Amend**

The Court must now determine whether Plaintiff should be given leave to amend the

Complaint on either of the claims.  Leave to amend is "freely give[n]" when there is no "undue

delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing

party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P.

15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend is generally denied only

when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto*

*v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992).

---

[3] Docket Entry 27 is titled "Writ of Error" and appears to chastise the Court Clerk for referring to Plaintiff as *pro se*. (ECF No. 27) ("Your clerk was perhaps confused; I am not pro se (I did not use this term) that I should represent some fraudulent fiction styled in all capital letters (dead corpse person), but rather sui juris, self in law.").  Docket Entries 28 and 30 are each a compilation of documents that Plaintiff asserts are relevant to this case, though many of them seem to be redundant to those attached to the Complaint. (ECF Nos. 28, 30).  Docket Entry 29 appears to be a copy of the various motions filed in this case on which Plaintiff has made handwritten notes and corrections. (ECF No. 29).  Taken together, they do not constitute a substantive response to the arguments raised in the Motions to Dismiss.

[4] Another ground for dismissal in this case, though not raised by Defendants, is Plaintiff's failure to adequately plead subject-matter jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (holding that a plaintiff must affirmatively plead the facts essential to show jurisdiction).  The Complaint appears to assert this Court's jurisdiction on the basis of the parties' diversity, but the Complaint is silent on the matter of citizenship. *See* 28 U.S.C. § 1332.  The Complaint also fails to allege that the amount in controversy exceeds $75,000, as required by statute, since Plaintiff claims only that "the controversy exceeds twenty dollars." (Compl., ECF No. 1-1, at 5).

1        The Court sees the major deficiencies in this case as being Plaintiff's failure to

2   demonstrate that the Smiths were not in default at the time of the foreclosure, Plaintiff's failure

3   to show that she actually tendered the amount owing on the loan to Citicorp before the

4   foreclosure sale, and Plaintiff's failure to demonstrate that her deed was superior to CMI's deed

5   of trust.

6        It is clear from the Complaint and Plaintiff's various documents that the Smiths were in

7   default at the time of foreclosure.  It is also clear the Plaintiff never made a valid tender to satisfy

8   the outstanding mortgage balance.  It is even more clear that Plaintiff's deed, regardless of

9   whether it was recorded, was junior to the deed of trust and thus she is not entitled to quiet title.

10   Amending the Complaint could not cure these deficiencies.  Therefore, the Court finds that leave

11   to amend should not be granted due to the futility of amendment. *DeSoto*, 957 F.2d at 658.

**CONCLUSION**

13        IT IS HEREBY ORDERED that CMI's Motion to Intervene (ECF No. 21) is

14   GRANTED.

15        IT IS FURTHER ORDERED that CMI's Motion to Dismiss (ECF No. 22) is GRANTED

16   with prejudice.

17        IT IS FURTHER ORDERED that all other pending Motions (ECF Nos. 23, 24, 32) are

18   DENIED as moot.

19        IT IS SO ORDERED.

21   Dated: March 25, 2015   _____

23                                ROBERT C. JONES
                             United States District Judge

11